998 F.2d 1185
 16 Employee Benefits Cas. 2610, Pens. Plan Guide P 23881E
The BLAW KNOX RETIREMENT INCOME PLAN, Blaw Knox Pension
Plan, Blaw Knox Iam Pension Plan, Blaw Knox Equipment
Pension Plan, Blaw Knox Duraloy Pension Plan for Salaried
Employees, Blaw Knox Duraloy Hourly Pension Plan and
Fiduciaries Dean G. Wilson and Richard A. McIntyre, Appellants
v.
WHITE CONSOLIDATED INDUSTRIES, INC., and John Doe(s).
 No. 92-3612.
 United States Court of Appeals,
Third Circuit.
 Argued on May 3, 1993.
Decided June 30, 1993.
 
 J. Frank McKenna, III, (argued), Kenneth R. Bruce, Anne E. Mulgrave, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, for appellants.
 Robert S. Garrett, Egler, Garrett & Egler, Pittsburgh, PA, William McGuinness, (argued), Alexander R. Sussman, Audrey M. Samers, Fried, Frank, Harris, Shriver & Jacobson, New York City, for appellees.
 Before: COWEN, ROTH and ROSENN, Circuit Judges.OPINION OF THE COURT
 ROTH, Circuit Judge:
 
 
 1
 This is a companion case to No. 92-3676, Pension Benefit Guar. Corp. v. White Consolidated Indus. Inc., 998 F.2d 1192 (3d Cir.1993). The Blaw Knox Pension Plans and their fiduciaries (the "Plans") filed a complaint in the United States District Court for the Western District of Pennsylvania against White Consolidated Industries ("WCI") on the same day as the Pension Benefit Guaranty Corporation (the "PBGC") brought its above-captioned action against WCI. The Plans' amended complaint includes allegations against WCI that are also contained in the PBGC's complaint. Therefore we issue our opinion in this case simultaneously with our opinion in the related action.[1]
 
 
 2
 This case arises from WCI's transfer of a group of unprofitable businesses and their nine associated underfunded pension plans to the Blaw Knox Corporation ("BKC"). The Plans filed a five count amended complaint on November 19, 1991, six years after WCI's transfer of the plans to BKC. The amended complaint alleged that the transaction resulted in: a breach of fiduciary duty by WCI in violation of section 404 of ERISA, 29 U.S.C. § 1104, a prohibited transaction in violation of section 406, 29 U.S.C. § 1106, interference with the Plans' participants' pension rights in violation of section 510, 29 U.S.C. § 1140, an improper termination under section 4062, 29 U.S.C. § 1362, and a transaction to evade liability under section 4069, 29 U.S.C. § 1369.
 
 
 3
 WCI filed a motion to dismiss all five counts of the complaint and a motion for summary judgment on Counts I, II, and III. The district court entered a memorandum opinion dismissing all five counts of the Plans' complaint and denying as moot WCI's motion for summary judgment. We hold that the Plans have stated a legally sufficient claim for relief in Count V, under 29 U.S.C. § 1369. Therefore, we will affirm in part and reverse in part the district court's order and will remand for further proceedings consistent with this opinion.
 
 I.
 
 4
 The Plans are six employee pension benefit plans within the meaning of § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), and two of the Plans' fiduciaries within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).[2] Among other locations, the Plans are administered in Pittsburgh, Pennsylvania. The appellee, WCI, is a Delaware corporation conducting business throughout the United States.
 
 
 5
 The Plans filed their complaint on September 26, 1991 and their amended complaint on November 15, 1991. We accept as true the following allegations contained in their amended complaint in light of WCI's motion to dismiss. See Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir.1993).
 
 
 6
 Prior to September 27, 1985, WCI owned eight divisions[3] (the "BK Divisions") that manufactured steel rolls, metal castings and other industrial equipment for steel mills. Employees of the BK Divisions were participants in and earned pension benefits under the plans. On September 27, 1985, WCI sold the BK Divisions and the associated plans to the newly formed BKC. The Plans maintain that at the time of the negotiation of the sale, BKC was unable to make the contributions to the plans due under ERISA's minimum funding requirements. Furthermore, the Plans assert that it was unlikely then and at any time in the future that BKC would be able to make the required plan payments.
 
 
 7
 The Plans allege that one of WCI's principal purposes in selling the BK Divisions was to avoid WCI's liability for the plans' unfunded benefits. Through the sale, WCI shifted that liability to BKC. The Plans charge that, as part of the negotiations of the sale, WCI understated the amount of the plans' unfunded liabilities and that BKC relied on the alleged understatement when it decided to purchase the assets of the BK Divisions. The Plans assert that BKC paid no money for the assets of the BK Divisions, but assumed WCI's unfunded plan obligations as consideration for the transfer.
 
 
 8
 The Plans contend that the pension rights of the plans' participants and beneficiaries were adversely affected as a result of WCI's sale. Additionally, the Plans aver that the Agreement of Purchase and Sale (the "agreement") executed in conjunction with the sale gave WCI control over the plans in certain respects: (a) purportedly requiring that BKC indemnify WCI for any liability arising out of the termination of any of the plans; (b) specifying what contributions BKC would have to make to the plans after the date of the sale; and (c) specifying how BKC was required to use any surplus assets resulting from the termination of any of the plans.
 
 
 9
 Moreover, the Plans allege that WCI maintained control over the plans through contingency arrangements in the agreements, to wit: either the failure of BKC to meet any of the requirements of the agreements, the termination by BKC of any of the plans that were underfunded, or the assertion of any claim or demand against WCI by BKC relating to the plans constituted events of default permitting WCI to repossess all of BKC's inventory, accounts receivable and motor vehicles. Additionally, under the agreement BKC established a $15 million letter of credit for WCI's benefit in the event a claim is asserted against WCI relating to the plans.
 
 
 10
 The Plans charge that, because WCI knew or should have known that BKC would be unable to make the required contributions to fund the plans, WCI agreed to pay $4 million a year to BKC for five years in order to prevent the plans' termination within five years of the sale date. Also as part of the agreement, WCI received from BKC a complete release from any liability connected with the sale or any other of BKC's activities concerning the plans.
 
 
 11
 The Plans' amended complaint charges WCI with committing the following specific violations of ERISA: breach of fiduciary duty or knowing participation as a non-fiduciary in a fiduciary's breach (Counts I and II), use of the plans' assets in an interested party or self-dealing transaction (Count III), discharging employees for the purpose of interfering with their attainment of rights under the plans (Count IV), and entering into a transaction for the principal purpose of evading pension liability (Count V).
 
 
 12
 WCI filed a motion to dismiss all five counts of the Plans' amended complaint for failing to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6).[4] The district court granted WCI's motion to dismiss.[5] BKC's timely appeal followed.
 
 II.
 
 13
 The district court had jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and §§ 502(e)(1) and 4070(c) of ERISA, 29 U.S.C. §§ 1132(e)(1) and 1370(c). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6). We must accept as true all well-pleaded allegations in the complaint and construe all reasonable inferences that can be drawn from the alleged facts in the light most favorable to the Plans. We may affirm the dismissal only if it appears certain that no relief could be granted under any set of facts that could have been proved. Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir.1992); see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990).
 
 III.
 A. THE FIDUCIARY CLAIMS
 1. Counts I and II
 
 14
 The Plans allege in Count I of their amended complaint that WCI breached its fiduciary duty in violation of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)[6] when it sold the BK Divisions and transferred the associated pension plans to BKC. Count II derives from Count I and is a claim against non-fiduciaries for knowing participation in a fiduciary's breach of § 404 duties. WCI argues in response that it complied with the specific ERISA provisions governing funding and transfer of pension plan sponsorship and that its decision to sell the BK Divisions and to transfer the pension plans was a business decision not subject to ERISA's fiduciary provisions.
 
 
 15
 The district court correctly noted that ERISA permits an employer to function as both a plan administrator and a plan sponsor. 29 U.S.C. § 1108(c)(3). In Payonk v. HMW Indus., Inc., 883 F.2d 221 (3d Cir.1989), we outlined as follows the guidelines for determining whether a corporate management decision falls within the fiduciary function of ERISA:
 
 
 16
 [W]here an administrator of a plan decides matters required in plan administration or involving obligations imposed upon the administrator by the plan, the fiduciary duties imposed by ERISA attach. Where, however, employers conduct business and make business decisions not regulated by ERISA, no fiduciary duties apply. And, when employers wear "two hats" as employers and administrators "... they assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA."
 
 
 17
 Payonk, 883 F.2d at 225 (citations omitted).
 
 
 18
 In order to decide whether the district court properly dismissed the Plans' complaint, we must determine whether the complaint sufficiently alleges that WCI was performing a fiduciary and not a corporate function when it transferred the pension plans to BKC. From our review of the facts alleged, we conclude that WCI's decision to transfer the pension plans to BKC was a corporate business decision outside the scope of ERISA's protective rules. The district court concluded as much; therefore, we will affirm the district court's dismissal of Counts I and II.
 
 
 19
 We find the allegations in Counts I and II of the Plans' amended complaint insufficient for relief to have been granted based upon them, even if taken as true, for the following reasons. In selling the unprofitable BK Divisions and structuring the transaction to include the existing pension plans, the WCI corporate directors were making a corporate business decision. Consequently, WCI was acting in its corporate management role, and not in its role as plan administrator, with respect to the decision to transfer the pension plans. See Trenton v. Scott Paper Co., 832 F.2d 806, 809 (3d Cir.1987) ("It defies common sense to suggest that a corporation must allow a retirement board to make personnel decisions such as determining which plants need fewer employees."), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988); Payonk, 883 F.2d at 227 ("[T]he decision to terminate the HMW plan could only have been made and effectuated by HMW in its role as employer. No other party, including ... HMW as administrator, had the authority to make that decision.").
 
 
 20
 We think it is significant also, and the district court noted in its memorandum and order, app. at 151, that the Plans do not allege that WCI mismanaged the plans' assets in either Count I or II. ERISA provides that "a person is a fiduciary with respect to a plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. " 29 U.S.C. § 1002(21)(A) (Supp.1993) (emphasis added). Thus, ERISA's definition provides the contours of the exercise of fiduciary duties regarding plan administration and contains the elements that the Plans would necessarily have to allege in order to state a legally sufficient breach of fiduciary duties claim. As the district court concluded, app. at 152, the Plans erroneously relied on decisions that "pertain to actions by plan administrators regarding management of plan assets or plan administration that were allegedly taken for business reasons and [do] not address action taken by employers in their corporate management capacity. (citations omitted)."
 
 
 21
 Secondly, section 208 of ERISA imposes breach of fiduciary liability if the plan sponsor does not comply with the statutory funding obligations attendant upon a plan's merger, transfer or acquisition. 29 U.S.C. § 1058 (1982).[7] In its amended complaint, the Plans do not allege that WCI violated any of these provisions when it transferred the pension plans to BKC. The Plans do aver, however, that WCI breached its fiduciary duties by executing an alleged scheme to avoid unfunded pension liability by transferring the plans to BKC, an uncapitalized buyer. With respect to this allegation, the district court held, and we agree, that this claim is insufficient because "[WCI's] compliance with ERISA's provisions for the funding of merged, transferred or acquired pension plans as set forth in 29 U.S.C. § 1058 preclude[s] a finding that a fiduciary breach had occurred." App. at 153; see also United Steelworkers of Am., Local 2116 v. Cyclops Corp., 860 F.2d 189, 198-99 (6th Cir.1988); Payonk, 883 F.2d at 227.
 
 2. Count III
 
 22
 The Plans have alleged in Count III of their amended complaint that WCI violated sections 406(a)(1)(D) and 406(b) of ERISA, 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b).[8] Specifically, the Plans allege that WCI's transfer of the pension plans constituted a direct or indirect transfer of the plans' assets for the benefit of a party in interest and on behalf of a party whose interests were adverse to the interests of the plans' participants and beneficiaries. However, the Plans' allegations in their complaint do not factually state a cause of action under § 406; therefore, we will affirm the district court's dismissal of Count III.
 
 
 23
 As the district court correctly stated in its memorandum and opinion, "section 406(a) prohibits a plan fiduciary from causing transactions between a plan and a party in interest while section 406(b) bars transactions between a plan and its fiduciary including dealing with a plan's assets in the fiduciary's own interest or on behalf of a party whose interests are adverse to a plan or its participants or beneficiaries." App. at 155.
 
 
 24
 As an employer, WCI is by definition a party in interest under 29 U.S.C. § 1002(14)(c) and, as sponsor of the plans, is also a plan fiduciary. By comparison, the Plans do not allege or suggest in their complaint that BKC is a party in interest to this transfer; therefore, without this allegation, section 406 is not implicated by WCI's transfer of the pension plans to BKC. The Plans cite cases concerning transactions involving the investment of plan assets or transactions to which the plan was a party. By contrast, the transfer in this case did not involve the investment or management of plan assets. Rather, there was a change in sponsors of the plans while the plans' assets remained unaffected.
 
 
 25
 As we have discussed in section III. A. (1), 29 U.S.C. § 1058 specifically provides procedures to properly effect mergers or transfers of pension plans. Since the Plans do not allege that WCI in making the transfer, did not follow the regulations, their claim is inadequate.
 
 
 26
 B. INTERFERENCE WITH PARTICIPANTS' PENSION RIGHTS
 
 
 27
 The Plans have alleged in Count IV of their amended complaint that, by selling the BK Divisions and transferring the associated pension plans to BKC, WCI deliberately terminated the plans' participants' employment and interfered with the participants' attaining their pension rights in violation of section 510 of ERISA, 29 U.S.C. § 1140.[9] WCI contends that its transfer of the plans does not amount to an interference with pension rights under section 510 because the participants' rights under the plans remained the same before and immediately after the sale of the BK Divisions to BKC. The district court correctly stated and applied the law regarding section 510 in its memorandum and order. For the reasons stated in its order, app. at 157-59, we conclude that the Plans do not allege sufficient facts to sustain a claim for relief under section 510 and will therefore affirm the district court's dismissal of Count IV.
 
 
 28
 The prohibitions of section 510 are primarily aimed at preventing unscrupulous employers from discharging or harassing their employees to prevent them from attaining their vested pension rights. West v. Butler, 621 F.2d 240, 245 (6th Cir.1980). In addition, section 510 was designed "to protect the employment relationship that gives rise to an individual's pension rights." Id. Furthermore, the sale of an ongoing business is not prohibited by section 510. See Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). The antidiscrimination language of section 510 is aimed at protecting individual rights rather that the overall financial integrity or financial security of pension funds. West, 621 F.2d at 246. Section 510 protects against actions by employers which actions are taken for the purpose of interfering with attainment of pension eligibility. Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).
 
 
 29
 In this case, WCI's sale of the BK Divisions and transfer of the plans did not affect the participants' eligibility for benefits under the plans as the Plans have alleged. Although there was a change in employers, the employees who were participants in the plans prior to the sale continued their participation immediately after the sale. It was only the plans' sponsorship that was altered while the participants' rights under the plans remained unchanged.
 
 C. COUNT V
 
 30
 In Count V of their amended complaint, the Plans seek relief under § 4070 of ERISA, 29 U.S.C. § 1370, based on allegations that WCI violated ERISA sections 4062 and 4069, 29 U.S.C. §§ 1362 and 1369. On February 18, 1992, seventeen months after WCI's last contribution to the plans, the Blaw Knox Pension Plan ("Plan 003") literally ran out of money. As a result, the PBGC terminated Plan 003. 29 U.S.C. § 1342(a) (the PBGC must terminate plan that does not have assets available to pay currently due benefits). The unfunded liabilities of Plan 003 are estimated to be $82 million. The PBGC is now paying the guaranteed pension benefits to the beneficiaries of Plan 003. To date, BKC has not made the 1991 or 1992 contributions to the other plans, which are currently underfunded by an estimated $20 million.
 
 
 31
 The Plans allege in Count V that the beneficiaries under Plan 003 will lose certain pension benefits not guaranteed by the PBGC to which they are or would otherwise be entitled under the terms of the plan. The substance of the Plans' claims and arguments in Count V are identical to those raised and argued by the PBGC in its Counts IV and V in the related action. Therefore, our treatment of the Plans' allegations in Count V receives the same treatment of Counts IV and V in the PBGC Opinion.
 
 
 32
 We held in the PBGC Opinion that the PBGC had stated a legally sufficient claim against WCI under 29 U.S.C. § 1369.[10] We decided that section 1369's requirement that a transaction "become[ ] effective" within five years of the plan termination is met because a transaction does not take effect until the previous plan sponsor ceases making substantial payments to the pension plans. We also held that the PBGC did not state a legally sufficient cause of action against WCI under 29 U.S.C. § 1362.[11] We reasoned that because section 1369 specifically addresses predecessor liability and applies to the WCI-BKC transaction, we would not read an unexpressed predecessor liability rule into section 1362.
 
 
 33
 For the reasons stated in the discussion and application of the law of sections 1369 and 1362 in the PBGC Opinion prepared by Judge Cowen, see the PBGC Opinion at 1198-1202, which we adopt as the opinion of the court, we will reverse the district court's order dismissing Count V of the Plans' amended complaint.
 
 IV.
 
 34
 For the foregoing reasons, we will affirm in substantial part (the dismissal of Counts I, II, III and IV), but will reverse in one part (the dismissal of Count V), the order of the district court and remand for further proceedings consistent with this opinion and the PBGC Opinion.
 
 
 
 [1]
 Our opinion in the related action is hereafter referred to as "the PBGC Opinion." The facts set forth in the PBGC Opinion also apply to this case
 
 
 [2]
 The Plans are composed of the Blaw Knox Retirement Income Plan, the Blaw Knox Pension Plan, the Blaw Knox IAM Pension Plan, the Blaw Knox Equipment Pension Plan, the Blaw Knox Duraloy Pension Plan for Salaried Employees, and the Blaw Knox Duraloy Hourly Pension Plan. The Plans' fiduciaries are Dean G. Wilson and Richard A. McIntyre
 
 
 [3]
 The BK Divisions consisted of the Blaw-Knox Executive Divisions, the Blaw-Knox Casting Division, the Blaw-Knox Rolls Division, the Blaw-Knox New Machinery Division, the Blaw-Knox Equipment Division, the Duraloy Blaw-Knox Division, the Aetna-Standard Divisions and the Blaw-Knox Food & Chemical Equipment Divisions
 
 
 [4]
 WCI also moved for summary judgment on Counts I, II, and III of the amended complaint on the grounds that those claims were time-barred because the individual plaintiffs had actual knowledge of the alleged breaches and violations more than three years before commencing this action
 
 
 [5]
 The district judge therefore denied as moot WCI's summary judgment motion in light of the dismissal
 
 
 [6]
 Section 404 states in relevant part:
 (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; ...
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.... 29 U.S.C. § 1104(a)(1) (emphasis added).
 
 
 [7]
 Section 208 provides that the accrued benefit of any plan participant or beneficiary must not be lower immediately after the effective date of the merger or transfer than it was immediately before such merger or transfer. The PBGC regulations, 29 C.F.R. § 2615.23(a)-(e) (1991), set forth requirements governing the change of corporate sponsorship of a pension plan. These regulations require that WCI provide financial and actuarial information to the PBGC concerning the Plans and their former and current sponsors
 
 
 [8]
 Section 406 states in pertinent part that:
 (a) Transactions between plan and party in interest
 (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
 (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.
 (b) Transactions between plan and fiduciary
 A fiduciary with respect to a plan shall not--
 (1) deal with the assets of the plan in his own interest or for his own account,
 (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries.
 
 
 [9]
 Section 510 provides in pertinent part:
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.... 29 U.S.C. § 1140.
 
 
 [10]
 Section 1369(a) provides in relevant part:
 If a principal purpose of any person in entering into any transaction is to evade liability to which such person would be subject under this subtitle and the transaction becomes effective within five years before the termination date of the termination on which such liability would be based, then such person and the members of such person's controlled group (determined as of the termination date) shall be subject to liability under this subtitle in connection with such termination as if such person were a contributing sponsor of the terminated plan as of the termination date.
 29 U.S.C. § 1369 (emphasis added).
 
 
 [11]
 Section 1362(a) provides in relevant part:
 In any case in which a single-employer plan is terminated in a distress termination under section 1341(c) of this title or a termination otherwise instituted by the corporation under section 1342 of this title, any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability under this section.
 29 U.S.C. § 1362(a).