In re BUILDINGS BY JAMIE, INC., Debtor.

Stephen Tsai, Esq., Chapter 7 trustee, 751 Partners Group, Skeuse Realty (a family partnership), Rita Skeuse, as trustee of the generation skipping trust under the will of the late Thomas J. Skeuse, Sr., Springwater Farms (a sole proprietorship) and Reagent Chemical & Research, Inc., Plaintiffs,

v.

Buildings by Jamie, Inc. (a.k.a. Homes by Jamie), Jamie, Inc., James ("Jamie") Jones, Ann Davis Jones (a.k.a. Ann H. Davis), Era Ann Davis and Associates and Just Jamie, Inc., Defendants.

Bankruptcy No. 96–39381.
Adversary No. 98–3209.

United States Bankruptcy Court, D. New Jersey.

Oct. 27, 1998.

Gabriel Halpern, Fox & Fox, L.L.P., Livingston, NJ, for plaintiff/trustee.

Judith E. Reich, Drinker, Biddle & Reath, L.L.P., Princeton, NJ, for nondebtor defendants.

### MEMORANDUM OPINION

STEVEN A. STRIPP, Bankruptcy Judge.

This matter is before the court on the nondebtor defendants' motion to dismiss the adversary complaint for failure to state a claim and the plaintiffs' cross-motion for partial summary judgment. The principal issue on these motions is whether a chapter 7 trustee of a corporate debtor has standing to assert an alter ego action on behalf of the estate against nondebtor defendants. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O). For the following reasons, the defendants' motion is granted in part and denied in part and the plaintiffs' cross-motion is denied.

### I. FINDINGS OF FACT

On October 27, 1996, Buildings By Jamie, Inc. (the "debtor") filed a petition for relief under chapter 7 of title 11, United States Code ("Bankruptcy Code" or "Code"). Stephen Tsai, Esq. (the "trustee") was appointed chapter 7 trustee for the debtor. At the time of the debtor's filing, an action was pending in the Superior Court of New Jersey, Law Division, Middlesex County against the debtor, the debtor's principal, Jamie Jones and his wife, Ann Davis Jones in which the creditors who are co-plaintiffs in this proceeding sought to recover monies loaned to the debt-

or. After the order for relief, those creditors, who are 751 Partners Group, Skeuse Realty, Rita Skeuse in her capacity as trustee under her late husband's will, Springwater Farms and Reagent Chemical & Research, Inc. (the "creditors"), amended their state court complaint, naming Jamie, Inc. and Ann Davis & Associates as defendants and asserting claims of fraudulent concealment, fraudulent transfers, breach of fiduciary duty and alter ego.

751 Partners, a business formed by the late Thomas J. Skeuse Sr. ("Mr. Skeuse") and Robert Dallas for the purpose of buying and selling real estate, contracted with the debtor in July 1987 whereby it agreed to sell the debtor lots on which the debtor agreed to construct homes for sale to third parties in a development known as "Waltham Woods." The debtor is a close corporation in which Jamie Jones ("Mr. Jones") is the president and sole shareholder. Ann Davis and Associates, a real estate brokerage firm operated by Ann Davis Jones ("Mrs. Jones"), was the exclusive broker for the sale of the developed lots. The contract provided that upon the sale of each lot to a third party the debtor was to make a payment to 751 Partners. After Mr. Skeuse's death, 751 Partners reformed to consist of Skeuse Realty and the Skeuse Trust. Rita Skeuse, widow of Mr. Skeuse, is the trustee of the Skeuse Trust as designated by Mr. Skeuse's will. Skeuse Realty is a partnership consisting of Mr. and Mrs. Skeuse's seven children. Rita Skeuse also owns and operates a sole proprietorship, Springwater Farms.

According to the creditors, from March 1987 to July 1989 Mr. Skeuse loaned the debtor nearly $475,000. from the bank accounts of 751 Partners, Skeuse Realty and Springwater Farms for use exclusively in the construction of Waltham Woods. The debtor has not repaid the loans. In addition to the construction loans, the creditors allege that the debtor owes an additional $50,000. from the sale of one of the homes at Waltham Woods.

Mr. Jones notified the creditors in February 1991 that approval for sewer permits at Waltham Woods had been revoked. Consequently, construction ceased for twenty

months until the permits were reinstated. The creditors allege that the debtor had knowledge of the risk of revocation since June 1987 but nevertheless failed to disclose the risk to them. Despite the debtor's alleged knowledge, the debtor borrowed the sums in question from the creditors. Upon reinstatement of the approvals in September 1992, Mr. Jones, on behalf of the debtor, refused to perform the remainder of the contract due to an alleged illness.

On March 18, 1993, the debtor sold the only remaining home at Waltham Woods to a third party. The creditors allege that the debtor thereafter transferred the net proceeds, totaling approximately $270,000. to Jamie, Inc. for no consideration, which in turn transferred $100,000. to the Joneses for no consideration. The creditors further allege that the debtor transferred an account receivable in the amount of approximately $10,000. to Jamie, Inc. in 1995 for no consideration. Mr. Jones is also the exclusive principal of the nondebtor defendant corporation, Jamie, Inc.

In addition to the extension of the loans, the creditors facilitated the debtor's construction by guaranteeing construction loans from Somerset Trust Company, which has been succeeded by Summit Bank. Reagent Chemical & Research, Inc. ("Reagent"), a Delaware corporation owned and operated by the Skeuses, guaranteed approximately $500,000. in loans to the debtor in 1990. The creditors argue that the Joneses used the loan money from, and guaranteed by the creditors for their personal benefit including construction of their personal residence, purchase of real property and renovation of business property. Furthermore, the creditors allege that from May 1990 to November 1990, in a series of transactions, the debtor transferred all of its cash and several thousand dollars worth of assets to Jamie, Inc. for no consideration.

During this period, the debtor ceased operations and Mr. Jones continued operating as Jamie, Inc. which was engaged in a business virtually indistinguishable from the debtor's business. The two corporations were operated from the same location by the same employees and shared the same officer and shareholder, Mr. Jones. The creditors allege that after the commencement of the debtor's bankruptcy case, in 1997, Mr. Jones transferred all of the assets of Jamie, Inc. to Just Jamie, Inc. for no consideration. Just Jamie, Inc. is also a real estate developer and is operated by its sole principal, Mr. Jones.

This court entered an order on February 11, 1998 approving the trustee's application to retain Fox & Fox, L.L.P. as special litigation counsel. Counsel for the nondebtor defendants objected on grounds of conflict of interest because Fox & Fox represented the plaintiff creditors in the state court proceeding. Upon concession of the creditors' counsel that the creditors' claims were property of the bankruptcy estate and, therefore properly asserted by the trustee, the court found that there was no actual or potential conflict of interest.[1] The court further ordered dismissal of the state court action without prejudice. On April 30, 1998, the trustee and the creditors (collectively the "plaintiffs") filed an adversary complaint. The defendants filed a motion to dismiss the adversary complaint on June 12, 1998 and the plaintiffs filed a cross-motion for partial summary judgment on June 29, 1998.

### The Plaintiffs' Position

The plaintiffs' complaint is founded primarily upon the debtor's failure to repay the loan obligations and the transfers among the debtor and nondebtor defendants. In Count I, the plaintiffs assert that the transfers of approximately $270,000. and $10,000. in 1993 and 1995 from the debtor to Jamie, Inc. and to Mr. and Mrs. Jones constituted fraudulent transfers in violation of N.J.S.A. 25:2–3, 2–25 and 2–27.[2] The complaint also

---

1. The defendants argue on this motion that the trustee's counsel is not entitled to compensation due to a conflict of interest. (Mem. Opp'n. to Cross–Mot. for Summ.J. and in Supp.Mot. to Dismiss at 17.) That issue is not properly before the court, however, as no application for compensation has been filed. Moreover, unless there are material facts proven by the defendants

which were not available before, the doctrine of law of the case would presumably bar reassertion of a claim of conflict of interest.

2. N.J.S.A. 25:2–1 to 25:2–6 is the Fraudulent Conveyances Act ("FCA"), and N.J.S.A. 25:2–20 to 25:2–34 is the Uniform Fraudulent Transfer Act ("UFTA"). N.J.S.A. 25:2–7 to 25:2–19 was

asserts a cause of action to avoid fraudulent transfers under Bankruptcy Code section 548. Additionally, the plaintiffs assert that the post-petition transfer of all of Jamie Inc.'s assets to Just Jamie, Inc. constituted an avoidable postpetition transaction under section 549 of the Bankruptcy Code.

In Counts II, III, IV, VI, VII and VIII, the plaintiffs rely on the above mentioned allegations to support their claims of breach of fiduciary duty, fraud and fraudulent concealment, conversion, breach of contract, turnover of property of the estate and unjust enrichment. In Count V, the plaintiffs seek an order piercing the corporate veil of all corporate defendants to hold them, Mr. Jones and Mrs. Jones liable for the debtor's debts based upon an alter ego theory. The plaintiffs rely specifically on the lack of corporate formalities among the debtor and the nondebtor defendants as well as the free transferability of assets and the shared ownership, employees, location and line of business.

### The Defendants' Position

The nondebtor defendants argue in support of their motion to dismiss that the plaintiffs' claims are all barred by the statute of limitations. Alternatively, the defendants argue that even if the applicable statutes of limitations have not run, Counts II through VIII are non-core claims which belong to the creditors and, thus, are not property of the bankruptcy estate. Specifically, the defendants insist that the trustee does not have standing to assert an alter ego claim on behalf of the debtor's creditors since the claim is personal to the creditors rather than the corporate debtor.

### II. STANDARD OF REVIEW

The standard for the defendants' motion to dismiss for failure to state a claim upon which relief can be granted is governed by Federal Rule of Civil Procedure 12(b)(6)

which is incorporated by reference in Federal Rule of Bankruptcy Procedure 7012. In evaluating a 12(b)(6) motion, the court must accept as true "all well-pleaded allegations in the complaint" and must draw all inferences in the plaintiff's favor. *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.,* 998 F.2d 1185, 1188 (3d Cir.1993). If the plaintiff can establish grounds for relief under any set of facts, dismissal is unwarranted. Thus, a 12(b)(6) motion must be denied unless an "insuperable bar to relief is apparent on the face of the complaint." *Altemose Construction Co. v. Atlantic, Cape May and Parts of Burlington, Ocean and Cumberland Counties Bldg. Trades Council,* 493 F.Supp. 1181, 1183 (D.N.J.1980). The United States Supreme Court has stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must neither assess the plaintiff's credibility nor evaluate the likelihood of success, despite the improbability of the plaintiff's ultimately prevailing. *See Zucker v. Quasha,* 891 F.Supp. 1010, 1013 (D.N.J.1995) (citing *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)) *aff'd,* 82 F.3d 408 (3d Cir.1996). *See also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

A party seeking summary judgment bears the initial burden of demonstrating that the pleadings, depositions, answers, and affidavits, if any, create no genuine issues of material fact, and that the movant is therefore entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c) (incorporated by reference in Fed.R.Bankr.P. 7056). Where the moving

---

the Uniform Fraudulent Conveyances Act ("UFCA"). The enactment of the UFTA repealed the UFCA, but not the FCA. N.J.S.A. 25:2–34. The FCA and the UFTA authorize separate causes of action. *In re 2435 Plainfield Avenue, Inc.,* 223 B.R. 440 (Bankr.D.N.J.1998). The court notes that in its prior opinion in *2435 Plainfield Avenue, Inc.,* there is a reference in section II(A)(4)

to the FCA as the *"Uniform* Fraudulent Conveyances Act."* (emphasis added) That reference to the *"Uniform"* act was, however, an error. As stated herein and as noted elsewhere in *2435 Plainfield Avenue, Inc.,* the FCA and the UFCA were separate statutes. *See also, Trus Joist Corp. v. Treetop Associates, Inc.,* 97 N.J. 22, 29, 477 A.2d 817 (1984).

party satisfies this burden, the burden then shifts to the non-moving party to provide specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no genuine triable issue unless there is sufficient evidence that would permit a finding in favor of the non-moving party. *Id.* A court considering a motion for summary judgment does not resolve factual disputes but must view all facts and inferences therefrom in the light most favorable to the non-moving party. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1362 n. 1 (3d Cir.1996).

## III. CONCLUSIONS OF LAW

### A. Property of the Estate and the Trustee's Role

Section 323 of the Bankruptcy Code provides that the trustee is the representative of the bankruptcy estate and has the capacity to sue and be sued. The trustee's duties, in his capacity as the estate representative in a chapter 7 liquidation, are numerous. *See* 11 U.S.C. § 704. Generally, the trustee is responsible for collecting estate property, reducing it to money and distributing it in accordance with the priorities set forth in section 726. Section 544 of the Code specifically grants the trustee avoidance rights that would be available to creditors under non-bankruptcy law. Section 544(b) of the Code entitles the trustee to succeed to the existing rights of an actual unsecured creditor, unlike section 544(a), which by operation of law grants the trustee rights of a hypothetical creditor. The trustee's powers of avoidance, specifically the status of hypothetical or actual unsecured creditor, further the purpose of equal distribution to similarly situated creditors under Code section 726.

Although the trustee is explicitly authorized to sue and to marshal assets for collective ratable distribution, the scope of the trustee's standing to assert creditors' rights either in his capacity as representative of the estate or as representative of the creditors is not self-evident from the statute. The plaintiffs assert in Count V of the adversary complaint that the Joneses used the debtor corporation and Jamie, Inc., Just Jamie, Inc.

and Ann Davis & Associates to perpetrate a fraud on its creditors. Specifically, the plaintiffs are seeking to pierce the corporate veils based upon the Joneses' disregard of corporate formalities, free transfer of assets among the corporations and themselves and interchangeable use of the corporations. The defendants argue that the chapter 7 trustee does not have standing to assert an alter ego action on behalf of the debtor corporation's creditors, for the cause of action does not belong to the corporate debtor.

### B. Trustee's Standing to Assert Alter Ego Action on Behalf of Corporate Debtor

Section 541 of the Code provides that the commencement of a bankruptcy case creates an estate and identifies the property which comprises the estate. Property of the estate is defined rather broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Nonbankruptcy law determines the debtor's property rights and interests unless some federal interest requires otherwise. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under section 541, property interests held by the debtor pursuant to non-bankruptcy law therefore become property of the estate upon commencement of the case. Consequently, whether the debtor has a legal or equitable interest in asserting an alter ego action under state law determines whether such an action is property of the bankruptcy estate and thus within the trustee's authority to assert on the estate's behalf.

Despite the trustee's broad spectrum of rights under the Code, the nondebtor defendants argue that the trustee has no standing to assert causes of action on behalf of a debtor corporation's creditors against non-debtor third parties. The nondebtor defendants reason that an alter ego action is personal to the corporate creditors rather than the debtor, and it therefore does not constitute property of the estate under section 541.

### C. New Jersey Alter Ego Law

In considering whether the alter ego action is personal to a creditor or credi-

tors or whether it belongs to the corporate debtor, it is necessary to explore state law with respect to piercing the corporate veil. Since the debtor is incorporated and maintains its principal place of business in New Jersey, New Jersey law is applicable. To establish that the trustee has standing to assert an alter ego action as representative of the estate, the court must find that the debtor has a legal or equitable interest in piercing its own veil under New Jersey law. The principle is well settled in New Jersey that the doctrine of piercing the corporate veil is employed when fraud or injustice has been perpetrated. *Lyon v. Barrett*, 89 N.J. 294, 300, 445 A.2d 1153, 1156 (1982). The Superior Court of New Jersey discussed the doctrine in the context of a closely held corporation in which the minority shareholders were defrauded by the corporate principals' disregard of corporate formalities in the case of *Walensky v. Jonathan Royce International, Inc.*, 264 N.J.Super. 276, 624 A.2d 613 (App.Div.1993). The court stated that the corporate principal could be held liable under theories of piercing the corporate veil and successor liability because the principal "was using [the corporation] as his 'alter ego' and thus, was abusing the corporate form in order to advance his own personal interests." *Id.* at 282, 624 A.2d 613. Factors including ownership of a significant amount of stock coupled with the operation of the corporation essentially as the principal's "personal business conduit," therefore weigh heavily in favor of finding an alter ego relationship. *Id.* at 283, 624 A.2d 613. *See In re Velis*, 123 B.R. 497, 509 (D.N.J.1991) (identifying as factors supporting piercing corporate veil the fact that the corporation was a mere instrument through which shareholders conducted their own affairs and the corporation and owners failed to maintain separate identities) *rev'd on other grounds*, 949 F.2d 78 (3d Cir.1991). The Superior Court of New Jersey also held in *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J.Super. 388, 395, 565 A.2d 1133 (App.Div.1989), that commingling of funds among corporations and common ownership trigger piercing the corporate veil. The court stated, "[w]hile in most cases courts have been willing to pierce the corporate veil in the parent-subsidiary context, given the ease with which the individual owners here altered their organizations and closely held assets, there appears to be no reason to limit the application of the rule to parent-subsidiary relationships." *Id.* at 395, 565 A.2d. at 1136. See also *In re Cooper*, 147 B.R. 678, 683 (Bankr.D.N.J.1992), in which this Court noted that New Jersey courts generally pierce where such unity of ownership exists and where the corporation operates as an instrument of the shareholders' personal business such that failure to disregard the corporate entity would promote fraud.

The Third Circuit briefly discussed New Jersey law regarding veil piercing by a corporate debtor in *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239–40 (3d Cir. 1994). Without deciding the question whether a trustee has standing to assert an alter ego action, the Third Circuit noted that New Jersey courts have permitted corporate debtors to pierce their own veils. *Id.* (discussing *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir.1982), in which the trustee brought an alter ego action against principals of the corporate debtor). However, the court acknowledged that from a practical standpoint, principals of a solvent debtor will not be compelled to pierce the veil of the very entity they use as a conduit for their personal business. Piercing by the corporate principals would effectively extinguish their limited liability and expose them to the personal liability that the corporate form is employed to avoid. Recognizing that veil piercing is essentially an equitable proceeding, the Third Circuit noted,

It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporate fiction, or an involuntary tort creditor. In some states, however, piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors.... New Jersey alter ego or veil piercing law is currently based on such a theory and was so based at the time Marin was decided. Because piercing the corporate veil or alter ego causes of action are

based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.

*Id.* at 1240 n. 20. (citations omitted).[3] Although the Third Circuit did not expressly address the trustee's standing in *Marin,* it recognized it implicitly, for the trustee brought adversary actions to recover assets for the benefit of the corporate debtor's estate which had been transferred to the debtor's principals. The trustee argued that the principals had complete control over the debtor and nondebtor companies, the principals commingled their personal assets with the companies' assets and the companies failed to operate as distinct economic entities. 689 F.2d at 447. The actions of the nondebtor defendants removed property from the bankruptcy estate which effectively harmed all creditors collectively. Therefore, the trustee, acting as representative of the estate by marshaling assets for the benefit of creditors generally, was effectuating the bankruptcy policy of equality of treatment.

The majority of the courts in other jurisdictions that have addressed the issue of authority to pursue an alter ego action on behalf of a corporate debtor have also held that the trustee has standing. *See, e.g., S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.),* 817 F.2d 1142 (5th Cir.1987); *Steyr–Daimler–Puch of America Corp. v. Pappas,* 852 F.2d 132 (4th Cir.1988); *Kalb, Voorhis & Co. v. American Financial Corporation,* 8 F.3d 130 (2d Cir.1993); *St. Paul Fire and Marine Insurance Company v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989) (a general claim, resulting in no particularized injury, which could be brought by the debtor or any credi-

tor, must be asserted by the trustee and is binding on all creditors); *Williams v. California 1st Bank,* 859 F.2d 664 (9th Cir.1988) (trustee as assignee of specific creditors' claims lacked standing, for nonassigning creditors were denied participation in the distribution and trustee was not acting for the benefit of the estate). In *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987), the Seventh Circuit explored the distinction between personal and general claims, noting that the trustee's standing "depends on whether the action vests in the trustee as assignee for the benefit of creditors or, on the other hand, accrues to specific creditors." *Id.* at 1349 (citing *Cissell v. American Home Assurance Co.,* 521 F.2d 790, 793 (6th Cir.1975)). *But cf. Mixon v. Anderson (In re Ozark Restaurant Equip. Co., Inc.),* 816 F.2d 1222 (8th Cir.1987) (chapter 7 trustee lacked standing to litigate alter ego claims against corporate principals because under Arkansas law such right did not belong to the debtor corporation).

■■■■ The court finds the above mentioned cases favoring the trustee's standing dispositive. Accordingly, the court concludes that the trustee is the proper party to bring a veil piercing action against the debtor. New Jersey law holds that an alter ego action is an equitable remedy that belongs to the corporate entity and may be asserted by the corporation when it suffers harm from the fraudulent acts of its principals. Under section 541 of the Code, the corporate debtor's interest in its alter egos' assets is property of the bankruptcy estate. Consequently, the trustee, as representative

---

**3.** In *Henderson v. Buchanan (In re Western World Funding, Inc.),* 52 B.R. 743, 784 (Bankr.D.Nev. 1985) *aff'd in part and rev'd in part on other grounds,* 131 B.R. 859 (D.Nev.1990), *rev'd,* 985 F.2d 1021 (9th Cir.1993) the Bankruptcy Court for the District of Nevada addressed the fact that there were no Nevada cases holding that a corporation could pierce itself and stated that the absence of case law on the matter must not be interpreted as a prohibition on the debtor having such a cause of action under state law:

> Furthermore, it is not at all clear that a corporation would be forbidden to pierce its own

corporate veil in a nonbankruptcy context.... There is only a practical—not a legal or logical—difficulty in a corporation's bringing an alter ego action in its own name: The defendants who so completely dominate the corporation as to constitute its alter ego are not likely to institute an action to determine their own liability for corporate debts. Therefore, it is not surprising that the parties can produce no such case. The corporation needs an independent voice, such as a trustee in bankruptcy, in order to act to protect its creditors.

*Id.* (citations omitted).

of the estate, succeeds to the debtor's right to assert an action on its own behalf.

### D. Creditor Co-plaintiffs Lack Standing

■ Having established that the trustee has standing to assert the alter ego claim, it is necessary to address whether dismissal of the creditors named as co-plaintiffs in the adversary complaint is warranted. The facts of this case present a unique situation with respect to the personal/general claim analysis. The case law has distinguished alter ego claims that cause harm to the creditors generally from those which cause injury to a particular creditor or creditors. In the instant case, however, the creditors named as plaintiffs in the state court proceeding and those named as co-plaintiffs in the instant adversary action are the complete and exclusive creditor body. As such, injury to the creditor plaintiffs automatically presents a claim for generalized harm since the creditors asserting injury comprise the entire creditor body. Thus, any recovery on the alter ego claim would necessarily inure to the benefit of all creditors. Additionally, in the hearing on the trustee's application for special litigation counsel, the plaintiffs' counsel conceded that the creditors' claims belonged to the bankruptcy estate and acknowledged, therefore, that the creditors would not be named as co-plaintiffs with the trustee in the adversary complaint. (Tr. of Hr'g on Trustee's Appl. for Special Litig. Counsel at 9–10.) Unlike the assignment of claims in *Williams*, 859 F.2d at 665, the trustee's succession to the debtor's interest in this cause of action is not limited to certain creditors' claims and any recovery will not be for the benefit only of particular creditors. Recovery on the alter ego claim would benefit the bankruptcy estate as a whole, consequently, the alter ego claim is properly characterized as a general claim as to which the trustee alone has standing as representative of the estate. The creditors are dismissed as co-plaintiffs.

### E. The Trustee's Alter Ego Claim Is a Core Proceeding

Relying on their characterization of the alter ego claim as personal to creditors, the defendants argue that the within proceeding is noncore. The defendants reason that recovery on the alter ego claim will not benefit the estate as a whole and, therefore, it cannot be characterized as a matter seeking to recover property of the estate. The personal/general issue has already been resolved, however. This court concludes that the alter ego claim belongs to the bankruptcy estate and, therefore, is properly asserted by the trustee as representative of the estate.

The Second Circuit has held that alter ego claims to recover property of the estate are core proceedings. *St. Paul Fire and Marine Insurance Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir.1989). The Second Circuit stated that "[t]hese claims, although pleaded as claims personal to [the creditor], if they are property of the corporation or are claims available to all creditors, are claims regarding the transfer of property to the estate, as they would result in [the nondebtor's] assets being available to pay [the debtor's] debts." *Id.* at 701.

■ The case of *I.G. Davis, Jr. v. The Merv Griffin Co.*, 128 B.R. 78 (D.N.J.1991), held at page 96 that the corporate veil cannot be pierced for the benefit of the corporation, and that a chapter 7 trustee therefore lacks standing to bring an alter ego cause of action. The court held that such cause of action is therefore not a core proceeding. In so holding, the court followed *In re R.H.N. Realty Corp.*, 84 B.R. 356 (Bankr.S.D.N.Y. 1988). This court declines to follow those cases. In this case, New Jersey law governs, and as previously noted the Third Circuit opined in *Phar–Mor, Inc. v. Coopers & Lybrand*, which was issued after *Davis*, that New Jersey law allows a corporation to pierce its own corporate veil. 22 F.3d at 1240, n. 20. Moreover, the Second Circuit, which includes the court which decided *R.H.N. Realty Corp.*, decided in the subsequent case of *St. Paul Fire and Marine Insurance Co. v. PepsiCo, Inc.*, that where state law (in that case, Ohio law) provides that an alter ego claim may be asserted by a debtor corporation, an action on such claim by a bankruptcy trustee is a core proceeding under 28 U.S.C. § 157(b)(2)(E) *et al.* 884

F.2d at 701. The court concludes that this is a core proceeding.

### F. Statute of Repose on Fraudulent Transfers

The first count of the complaint, brought pursuant to section 544 of the Code, alleges that in 1993 and 1995 Mr. Jones transferred the proceeds from the sale of a Waltham Woods home and loan receivables approximating $270,000. and $10,000. respectively to Jamie, Inc. and to the Joneses individually with the actual or constructive intent to hinder, delay or defraud creditors. The complaint states that the transfers were made to insiders for little or no consideration while the debtor was insolvent and the assets remained under the exclusive control of Mr. Jones. The trustee also states that Mr. Jones transferred all of the assets of Jamie, Inc. to Just Jamie, Inc. postpetition which constitutes a fraudulent transfer and a violation of section 549 of the Code.

The defendants moved to dismiss this count based upon the running of the statute of limitations. Arguing that the statute of limitations for fraudulent transfers under the UFTA is four years, as stated in N.J.S.A. 25:2–31, defendants maintain that the alleged transfer of March 18, 1993 occurred more than five years before the filing of the instant adversary proceeding in April 1998.[4] The defendants failed, however, to address the transfer of the loan receivable in 1995 and the unauthorized postpetition transfer.

In response to the defendants' contention, the trustee argued that the claim is not barred, for the trustee was accorded an additional period of two years after his appointment. The trustee relies on *First Union National Bank v. Gibbons (In re Princeton–New York Investors, Inc.)*, 219 B.R. 55 (D.N.J.1998), which held that if the four year

statute of repose under the UFTA has not expired prior to the trustee's appointment, the trustee is afforded two additional years within which to file a claim.[5] The United States District Court for the District of New Jersey stated that section 546 of the Code is the decisive authority granting the trustee an additional two years. Section 546(a) authorize a trustee to commence an avoidance action under sections 544, 545, 547, 548 or 553 within two years from the entry of the order for relief. 11 U.S.C. § 546(a). Therefore, the district court affirmed the decision of the bankruptcy court, concluding that actions brought under section 544 are subject to section 546(a) which expands the time during which the trustee can exercise avoidance rights, so long as the state statute of repose has not run prior to his appointment. 219 B.R. 55, 64–65.

■ This court finds the district court's analysis in *Princeton–New York Investors* persuasive. Therefore, whether the statutory period has run turns on whether the four year period lapsed prior to the commencement of the bankruptcy. The debtor filed its bankruptcy petition on October 27, 1996, approximately three and a half years after the transfer of the subject Waltham Woods proceeds. Since the four year statute of repose under the UFTA had not expired, section 546 authorized an additional two years to assert a section 544 avoidance claim. The instant adversary proceeding, having been filed in April 1998 was, therefore, well within the period authorized under section 546. Consequently, this court finds that the trustee's avoidance actions are not barred by the statute of repose and the defendants' motion to dismiss with respect to Count I is denied.

### G. Creditors' Claims Against the Debtor

■ With respect to the remaining counts, the defendants contend that dismissal

4. The FCA does not contain its own statute of limitations or a statute of repose as the UFTA does. If the statutory period for the FCA is not the four years set forth in N.J.S.A. 25:2–31, it would be six years under N.J.S.A. 2A:14–1.

5. The district court held in *Princeton–New York Investors* that N.J.S.A. 25:2–31 was a statute of repose rather than a statute of limitations. The court stated that a statute of repose creates an

absolute time period after which liability ceases to exist whereas a statute of limitations is a procedural device which bars the remedy rather than the right and, unlike a statute of repose, may be subject to tolling. The district court noted, however, that whether the statute is characterized as a statute of repose or a statute of limitations, it is nonetheless subject to section 546 of the Bankruptcy Code.

is warranted to the extent that claims are brought against the debtor itself.[6] This court agrees with the defendants' position on this issue. The trustee, who is representative of the estate, does not need to sue the debtor to recover property; the estate already owns all of the debtor's property under Code section 541. As to the creditors, the proper procedure for them to prosecute claims directly against the debtor is to simply file proofs of claims in accordance with the Bankruptcy Code and Rules. Accordingly, the defendants' motion to dismiss is granted to that extent.

### H. Material Issues of Fact are Presented by Counts I and V

Finally, the court must address the trustee's cross-motion for partial summary judgment on Counts I and V. Specifically, the trustee requests entry of judgment that the transfers from the debtor to the nondebtor defendants were fraudulent, that the nondebtor defendants are successors in interest to the debtor and that the debts must be paid over to the estate. The court finds that genuine issues of material fact have been raised with respect to whether the transfers were made for no or unequal consideration, whether the transfers were concealed and whether the sale proceeds were used for the Joneses' personal benefit.[7] Furthermore, the court finds that genuine issues of material fact have been raised with respect to whether the nondebtor defendants had identities separate and apart from the debtor corporation. As such, the trustee's cross-motion for partial summary judgment is denied.

### IV. CONCLUSION

The aforementioned discussion constitutes the findings of the court. In summary, the

nondebtor defendants' motion to dismiss is granted in part and is denied in part as set forth above. The trustee's cross-motion for partial summary judgment on Counts I and V is denied. The trustee is to submit an order within ten days, including a provision for amendment of the adversary proceeding caption to reflect the rulings as to dismissal of parties. The trustee is also to set up a phone conference thereafter to schedule further proceedings.

---

**6.** The court notes that attorneys for the nondebtor defendants are named on the Notice of Motion to Dismiss and the brief in support of the motion as "attorneys for the debtor." All subsequent filings, however, identify the attorneys as representing the nondebtor defendants. At the hearing on the within motions, the attorney clarified that her firm represents only the nondebtor defendants. The debtor was therefore technically unrepresented although counsel advanced this argument on the debtor's behalf.

**7.** The trustee argues that to the extent a transfer is avoided under either section 544 or 548 of the Code the nondebtor defendants must pay the plaintiff's costs and fees incurred in connection with the cross-motion pursuant to Code section 550. The court does not reach this issue, however, as the trustee's cross-motion for partial summary judgment on the avoidance claim is denied.