**In re OAK PARK CALABASAS CONDOMINIUM ASSOCI- ATION, Debtor.**

**No. SV 02–17038–GM.**

United States Bankruptcy Court, C.D. California.

Dec. 11, 2003.

Rodger M. Landau, Los Angeles, CA, for debtor.

## MEMORANDUM OF OPINION DENYING MOTION FOR RECONSIDERATION OF ORDER DENYING CONFIRMATION

GERALDINE MUND, Bankruptcy Judge.

Oak Park Calabasas Condominium Association seeks reconsideration of its Second Modified Plan of Reorganization, apparently on the grounds that the Court made a manifest error of law in the application of 11 U.S.C. §§ 1129(a)(7) and 726(a)(5).[1] The debtor further argues that I failed to look at the underlying policies of the Bankruptcy Code, which weigh in its favor. This motion does not meet the requirements for reconsideration of the prior order and therefore is denied.

On October 23, 2003, I entered a Memorandum of Decision on Confirmation of the Debtor's Plan followed by an Order Denying Confirmation, which was entered on November 6, 2003. The motion for reconsideration was timely filed on November 17, 2003, with the hearing set on February 4, 2004. There is no explanation for the setting of this motion some 10 weeks after filing (since only 24 days' notice is required),[2] as my self-calendaring procedures would allow it to be heard any Wednesday after the necessary noticing period has expired. Other than December 31 and January 28, there are no Wednesdays unavailable for the hearing on this motion.

However, since the motion is based solely on law, no actual hearing is necessary. Therefore, the order denying this motion vacates the hearing date of February 4, 2004.[3]

 Although the motion to reconsider does not state a specific procedural basis, it appears to fall under Rule 9023, which incorporates F.R.C.P. Rule 59. A motion brought under F.R.C.P. 59 involves reconsideration on the merits and should not be granted unless it is based on one or all of the following grounds: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow the moving party the opportunity to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to reflect an intervening change in controlling law.[4] Since there is no newly discovered or previously unavailable evidence presented and no intervening change in controlling law, the motion must be based either on a manifest injustice or manifest errors of law or fact. A "manifest injustice" is defined as "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds;" while the term "manifest error" is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record."[5]

The motion puts forth two bases: (1) if the debtor is determined to be solvent, the best interest of creditors test is satisfied when the debtor pays post-petition interest

1. Unless stated otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.; all "Rule" references are to the Federal Rules of Bankruptcy Procedure; all "F.R.C.P." references are to the Federal Rules of Civil Procedure; and all "L.B.R." references are to the Local Bankruptcy Rules.

2. L.B.R. 9013–1(a)(6)(B).

3. L.B.R. 9013–1(a)(14).

4. *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir.1999), *cert. denied*, 529 U.S. 1082, 120 S.Ct. 1708, 146 L.Ed.2d 511 (2000)(cit.omitted).

5. Black's Law Dictionary 563 (7th ed.1999).

at the federal judgment interest rate; and (2) the Court has misread § 1129(a)(7) because that provision does not guarantee recovery equal to what a creditor would receive if there were no bankruptcy.

The movant is incorrect on both grounds and neither rises to the level of "manifest injustice" or "manifest error."

▮▮▮ Debtor claims that I must treat the debtor as "solvent" or "insolvent" when applying §§ 1129(a)(7) and 726(a). There is no legal foundation for this argument. However, even following debtor's line of reasoning, its theory does not lead to the result it seeks. The debtor errs by merging the payment from liquidated assets of the estate (thus calculating the amount ECC would *receive* under Section 726(a)) and the rights that ECC would *retain* to collect from property of the debtor which is not property of the estate. The Trustee may only collect and distribute assets of the debtor which are property of the estate.[6] Theoretically, homeowner fees for post-petition assessments might be classified as property of the estate, but in actuality they have little or no value and would be abandoned by the trustee.[7]

The most similar situation is *In re General Teamsters, Warehousemen and Helpers Union, Local 890*,[8] which involved a local chapter of a union. While the opinion does not directly confront the issue of whether a union local could merely cease to exist, the Ninth Circuit found that in a hypothetical Chapter 7, the local's collective bargaining agreement and right to collect future dues could not be liquidated to pay off creditors because the law re-

quires that the members choose their own representatives and that the dues are to be used solely for the members' and union's benefit.[9] The homeowner association situation in this case is very similar since, by state law, the only thing that dues can be used for is the expenses of the association, though some portion is subject to execution for payment of judgments.[10] This limited use leaves no unencumbered asset for the trustee to sell and it is inconceivable that anyone would buy it for an amount that would pay off even the principal still owing ECC. Since only the trustee, the elected board of the HOA, or a court-ordered person could manage and collect the dues, realizing on this stream of payments would also be terribly burdensome to the trustee and of little or no value to the estate. Abandonment would be the result. Thus, future dues would not be collected by the trustee in a Chapter 7 and there would be no distribution of the dues to unsecured creditors under § 726.

Section 1129(a)(7)(A) requires that if a claim or interest does not accept the plan, that claim will "receive or *retain* under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or *retain* if the debtor were liquidated under Chapter 7 of this Title on such date" (emphasis added). As explained in the Memorandum of Opinion Denying Confirmation, this debtor is unique because it will and must continue to exist even if it were "liquidated" in Chapter 7. The best analogy to this debtor is a human being who obtains a discharge from some of its obligations, but faces the future with cer-

---

6. Section 704(1).

7. Section 554(a).

8. 265 F.3d 869 (9th Cir.2001).

9. *Id.* at 877.

10. *See* the discussion in the Memorandum of Opinion entered on October 23, 2003, pp. 6–12.

tain non-dischargeable debts. This is an anomaly in the corporate world, but there are a variety of cases dealing with it in the area of tax debt or non-dischargeable student loans.

The premier case is *Bruning v. United States*,[11] which held that in a Chapter 7 case a non-dischargeable tax debt continues to accrue interest against the individual debtor post bankruptcy. As would be noted in later cases determining that the federal judgment rate is the appropriate one for distribution from a solvent Chapter 7 estate, *Bruning* holds that:

> The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate, are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of post-petition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high-interest creditors at the expense of other creditors.... [W]e hold that post-petition interest on an unpaid tax debt not dischargeable by § 17 remains, after bankruptcy, a personal liability of the debtor.[12]

Though *Bruning* was decided under the Bankruptcy Act, it has been made applicable under the Bankruptcy Code by the Ninth Circuit in *In re Artisan Woodworkers*.[13]

The movant relies on *In re Dow Corning Corporation*,[14] which is a very different kind of debtor from a California homeowner association as there is no requirement that Dow Corning Corporation survive a Chapter 7 liquidation. *Dow Corning's* holding that the most that an unsecured creditor is entitled to receive in a Chapter 7 proceeding is the amount of its claim plus interest at the legal rate from the date of filing does not differentiate between claims against the estate and those against the debtor and does not deal with the situation when the discharge of only certain debts is allowed. A better statement is found in *In re Vogt*,[15] which states that § 726(a)(5)

> provides a pre-emptive interest overlay, upon all claims paid through the final distribution, before funds are to be returned to the debtor. This interest overlay does not satisfy the state law claim, and if there is a discharge, it is the discharge that precludes further collection efforts against the debtor, personally (it does not preclude collection efforts from other sources—*see* § 524(e)).

> If there is no discharge (a corporate case, for example), the effect of § 726(a)(1)-(5), in combination with § 726(a)(6), is to limit the distributions that creditors are entitled to from the trustee of the estate, as trustee of the estate. The interplay of § 726(a)(1)-(5) and (a)(6) do not generate the satisfaction of all rights to payment if there be no discharge.[16]

**11.** 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964).

**12.** *Id.*, 376 U.S. at 363, 84 S.Ct. at 909.

**13.** 204 F.3d 888, 892 (9th Cir.2000). For a list of other circuit courts which have applied *Bruning* to the Bankruptcy Code, *see In re*

*Pardee*, 218 B.R. 916, 921 (9th Cir. BAP 1998).

**14.** 270 B.R. 393 (Bankr.E.D.Mich.2001).

**15.** 250 B.R. 250 (Bankr.M.D.La.2000).

**16.** *Id.* at 265.

686

This differentiation between the federal judgment interest rate, which is chargeable to the estate, and the ability to collect the remaining judgment at the state interest rate from the debtor who survives bankruptcy is seen in a variety of cases. *In the Matter of Cajun Electric Power Cooperative, Incorporated*[17] holds that "a debtor's obligation with respect to post-petition interest terminates only 'if and when' the debtor obtains a discharge from the bankruptcy court." Citing *Kellogg v. United States (In re West Tex. Marketing Corp.)*,[18] *Cajun* states that "[o]nly upon discharge . . . is the state law obligation to pay extinguished."[19]

The issue of interest has arisen in a series of Chapter 13 student loan cases, such as *In re Kielisch*,[20] in which the Court of Appeals allowed the creditor to apply plan payments to post-petition and post-confirmation interest on the non-dischargeable student loan debt. *Kielisch* involved two cases of Chapter 13 debtors whose confirmed plans paid their student loan creditors the full amount of principal and pre-petition interest, but no post-petition interest. Under the terms of the notes, one loan accrued interest at 8% and the other at 9%.[21] After discharge, ECMC sought accrued post-petition interest on its claims and calculated the amount due by applying the Chapter 13 payments it received first to post-petition and post-confirmation interest. The Fourth Circuit allowed this on the grounds that application of payments has no effect on other creditors since the debtors remain personally

responsible for non-dischargeable debts that ride through the bankruptcy unaffected to become a post-petition liability of the former debtor. No comment was made by the Fourth Circuit that a reduced rate of interest should be used. Similarly, post-petition interest on support obligations rides through the bankruptcy and is collectible individually against the debtor.[22]

In the § 523(a) context, if a state court judgment had been obtained prior to bankruptcy, the most that the bankruptcy court should do is to find that some or all of that judgment is non-dischargeable. The state court judgment would not be replaced with a federal judgment at the federal interest rate.[23] After termination of the automatic stay, the judgment creditor could continue collection efforts against property which is NOT property of the estate to satisfy its judgment. Any sums received from the trustee would be applied to reduce the amount still owed on the judgment, but would not transmute it to the lower (or potentially higher) federal judgment interest rate.

This result is logical because the public policy for limiting post-petition interest to the federal judgment interest rate for distributions under § 726(a)(5) is to safeguard a fair distribution of the assets of the estate and to create administrative simplicity. The only reason that the debtor who is liquidated under Chapter 7 is not personally liable to pay the creditor the difference between the amount received

**17.** 185 F.3d 446, 455 (5th Cir.1999).

**18.** 54 F.3d 1194, 1203 (5th Cir.1995).

**19.** 185 F.3d at 455.

**20.** 258 F.3d 315 (4th Cir.2001).

**21.** *Kielisch v. Educational Credit Mgmt. Corp.*, 258 F.3d 315, 326 (4th Cir.2001), *referencing*

Brief of Appellant Educational Credit Management Corporation, filed on January 19, 2001, 2001 WL 34108330 at *4, 6.

**22.** *See In re Foross*, 242 B.R. 692 (9th Cir. BAP 1999).

**23.** *See In re Comer*, 723 F.2d 737 (9th Cir. 1984); *In re Heckert*, 272 F.3d 253 (4th Cir. 2001).

from the solvent estate and the higher interest rate still owed on the contract or state court judgment, is because the debtor has received a Chapter 7 discharge. If the debtor is not qualified for discharge or the debt involved is not discharged, the creditor can proceed against the debtor personally to collect the balance that is owed to it.

Because Oak Park cannot obtain a discharge and cannot simply disappear, but remains a collectible entity as though it were a human being, the Court must look at what ECC retains after the application of Chapter 7. In this case ECC retains a non-dischargeable judgment, since the debtor cannot get a discharge and since ECC has not agreed to the discharge set forth in the Chapter 11 plan. The future stream of payments against which ECC can collect, the requirement by the state that Oak Park remain in business, and the determination by the Bankruptcy Code that a debtor who is not an individual is barred from receiving a Chapter 7 discharge create a public policy that requires ECC to be paid in full at the state judgment interest rate of 10% through the plan or the plan must fail.

For the above reasons, the motion to reconsider is hereby denied.