OPINION OF THE COURT
BARRY, Circuit Judge.
This appeal requires us to determine whether personal injury causes of action arising from the alleged wrongful conduct of a debtor corporation, asserted against a third-party non-debtor corporation on a “mere continuation” theory of successor liability under state law, are properly characterized as “generalized claims” constituting property of the bankruptcy estate. We conclude that they are, and will, therefore, affirm the order of the District Court.
*877 I.
In August of 2010, Aaroma Holdings LLC (“Aaroma”), f/k/a Duane Street, LLC, purchased certain assets and assumed certain liabilities of Emoral, Inc. (“Emoral”), f/k/a Polarome International, Inc., a manufacturer of diacetyl, a chemical used in the food flavoring industry. At the time of the transaction, the parties were aware of potential claims against Emoral arising from exposure to diacetyl, although those individuals who came to be known in this litigation as the “Diacetyl Claimants” or the “Diacetyl Plaintiffs” (herein, “Diace-tyl Plaintiffs”) apparently had never themselves been employed by Emoral. The Asset Purchase Agreement specifically provided that Aaroma was not assuming Emoral’s liabilities related to “the Diacetyl Litigation,” and that it was not purchasing Emoral’s corresponding insurance coverage. (App. at 326-27.)
When Emoral filed for bankruptcy protection in June of 2011, disputes arose between the bankruptcy trustee (the “Trustee”) and Aaroma, including, for example, the Trustee’s claim that Emoral’s sale of assets to Aaroma constituted a fraudulent transfer. On September 21, 2011, the Trustee and Aaroma entered into a Settlement Agreement (the “Agreement”) resolving the claims. As part of the Agreement, Aaroma agreed to pay $500,000 and take certain specific actions, and the Trustee agreed to release Aaroma from any “causes of action ... that are property of the Debtor’s Estate” as of the date of the Agreement. (Id. at 1079-80.)
At a hearing before the Bankruptcy Court regarding approval of the settlement, the Diacetyl Plaintiffs objected to the releases contained in the Agreement to the extent that those releases might bar them from bringing claims against Aaro-ma, as a successor to Emoral, for personal injuries related to diacetyl. A representative for the Trustee stated its view that the Diacetyl Plaintiffs’ successor liability claims against Aaroma “do[ ] not belong to the Estate” and that the Trustee, therefore, “can’t release [them].”[1] (Id. at 1277.) Counsel for Aaroma argued, however, that whether or not the Diacetyl Plaintiffs’ causes of action were property of the estate (and therefore covered by the release) was not an issue before the Bankruptcy Court at that time. (Id. at 1280-81.) Ultimately, the parties added the following language to the order approving the settlement to address concerns expressed by the Diacetyl Plaintiffs: “Nothing contained in this Order or in the Aaro-ma Settlement Agreement will operate as a release of, or a bar to prosecution of any claims held by any person which do not constitute Estate’s Released Claims as defined in the Aaroma Settlement Agreement.” (Id. at 1206, 1355.) By order of October 7, 2011, the Bankruptcy Court approved the settlement. The ultimate question, however, of whether the Diacetyl Plaintiffs’ causes of action constituted “Estate’s Released Claims,” as defined in the Agreement, was not resolved.
The Diacetyl Plaintiffs filed individual complaints against Aaroma in the Superior Court of New Jersey (see, e.g., id. at 1227-45) alleging personal injury and product liability claims and asserting that Aaroma was a “mere continuation” of Emoral and, therefore, liable. (Id. at 1233.) In April 2012, Aaroma filed in the Bankruptcy Court a “Motion to Enforce Court Order Approving Settlement with Bankruptcy *878 Trustee and Compelling Dismissal of State Court Actions,” arguing that the Diacetyl Plaintiffs’ claims were barred by the Agreement’s language as to release. The Diacetyl Plaintiffs opposed the motion, arguing that it was the understanding of the parties that their claims were not released under the Agreement. (Id. at 1324-26.) They cited, for example, the statement made on behalf of the Trustee during the hearing before the Bankruptcy Court prior to the approval of the settlement that their claims “do[ ] not belong to the Estate” and that the Trustee, therefore, “can’t release [them].” (Id.) In the motion to enforce the order approving the settlement, however, the Trustee did not take a position, stating that it was an issue of law for the Bankruptcy Court to determine. (Id. at 1341.)
Following oral argument, the Bankruptcy Court, in a lengthy opinion, denied Aa-roma’s motion, holding that the Diacetyl Plaintiffs’ personal injury causes of action were not property of the estate because the Diacetyl Plaintiffs alleged “a particular injury not generalized injury suffered by all shareholders or creditors of Emoral.” (Id. at 1387.) The Bankruptcy Court stated that “While successor liability has been imposed derivatively, this Court finds that the underlying injury that is alleged to be the basis and premise of the state court actions is personal harm ... to the individual plaintiffs” and that “Emoral has not suffered any personal harm nor have the creditors as a general whole.” (Id.)
Aaroma appealed to the District Court, and the District Court reversed, emphasizing that the Diacetyl Plaintiffs had no cause of action against Aaroma (which, it was not disputed, neither manufactured nor sold diacetyl) except on a successor liability theory. (Id. at 7-8.) The District Court held that the cause of action for successor liability was a “generalized” claim belonging to the estate because the facts giving rise to the cause of action were not specific to the Diacetyl Plaintiffs but common to all creditors, and because, if the Diacetyl Plaintiffs were to succeed in establishing that Aaroma constituted a “mere continuation” of Emoral, this would benefit the creditors of Emoral generally. (Id. at 7-9.) It stated:
[T]he potential liability of Aaroma to the Diacetyl Plaintiffs does not arise out of the alleged misfeasance of Aaroma as to these creditors individually but rather out of its alleged continuation of the general business operation of the actual alleged wrongdoer, Emoral. Put slightly differently, for purposes of determining whether the cause of action belongs to the Estate, the critical distinction between the personal injury claim against Emoral and the successor liability claim against Aaroma is that establishing the former would benefit only the allegedly injured Diacetyl Plaintiffs whereas establishing the latter — that Aaroma is the “mere continuation” of Emoral and thus should be charged with all its liabilities — would benefit creditors of Emoral generally.
(Id. at 8-9.) Accordingly, the District Court reversed and remanded to the Bankruptcy Court for entry of an order consistent with the District Court’s opinion. The Diacetyl Plaintiffs now appeal, arguing that they have standing to assert their personal injury causes of action against Aaroma, and that the District Court erred in conflating these claims with their successor liability theory.
II.
We have jurisdiction to review the order of the District Court pursuant to 28 U.S.C. §§ 158(d) and 1291. The District Court had jurisdiction to review the Bankruptcy Court’s decision pursuant to 28 U.S.C. § 158(a). We “exercise the same *879 standard of review as the District Court when it reviewed the original appeal from the Bankruptcy Court,” and, thus, review the Bankruptcy Court’s factual findings under a clearly erroneous standard and exercise plenary review over legal issues. In re Rodriguez, 629 F.3d 136, 138 (3d Cir.2010) (quoting In re Handel, 570 F.3d 140, 141 (3d Cir.2009)).
III.
The basic legal framework applicable to this case is not in dispute. After a company files for bankruptcy, “creditors lack standing to assert claims that are ‘property of the estate.’ ” Bd. of Trustees of Teamsters Local 868 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002). The “estate,” as defined in the Bankruptcy Code, includes “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). This includes causes of action, which are considered property of the bankruptcy estate “if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law.” Foodtown, 296 F.3d at 169 n. 5. In order for a cause of action to be considered “property of the estate,”
the claim must be a “general one, with no particularized injury arising from it.” On the other hand, if the claim is specific to the creditor, it is a “personal” one and is a legal or equitable interest only of the creditor. A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.
Id. at 170 (citing St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir.1989) and Koch Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1348-49 (7th Cir.1987)).
A cause of action that is “property of the estate” is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors. This promotes the orderly distribution of assets in bankruptcy, and comports with “the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor’s claim.” Koch Refining, 831 F.2d at 1344. As the Second Circuit has held, when examining “common claims against the debt- or’s alter ego or others who have misused the debtor’s property in some fashion,” where a claim is “a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee’s action.” St. Paul Fire & Marine Ins. Co., 884 F.2d at 701.
To determine whether the Diacetyl Plaintiffs’ cause of action against Aaroma constitutes property of Emoral’s bankruptcy estate, we must examine the nature of the cause of action itself. While the Diace-tyl Plaintiffs focus on the individualized nature of their personal injury claims against Emoral, we cannot ignore the fact, and fact it be, that their only theory of liability as against Aaroma, a third party that is not alleged to have caused any direct injury to the Diacetyl Plaintiffs, is that, as a matter of state law, Aaroma constitutes a “mere continuation” of Emo-ral such that it has also succeeded to all of Emoral’s liabilities.
The parties do not dispute that under both New Jersey and New York state law,[2] an acquiring company is gener *880 ally “not liable for the debts and liabilities of the selling company simply because it has succeeded to ownership of the assets of the seller,” except in limited circumstances. Lefever v. K.P. Hovnanian Enters., Inc., 160 N.J. 307, 310, 734 A.2d 290 (1999). One exception to the general rule against successor liability is where the purchasing company “is a mere continuation of the seller.” Id. To establish liability based on a “mere continuation” theory, as the Diacetyl Plaintiffs seek to do against Aaroma, a plaintiff must “establish that there is continuity in management, shareholders, personnel, physical location, assets and general business operation between selling and purchasing corporations following the asset acquisition.” Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 342, 431 A.2d 811 (1981).
The Diacetyl Plaintiffs fail to demonstrate how any of the factual allegations that would establish their cause of action based on successor liability are unique to them as compared to other creditors of Emoral. Likewise, they fail to demonstrate how recovery on their successor liability cause of action would not benefit all creditors of Emoral given that Aaroma, as a mere continuation of Emoral, would succeed to all of Emoral’s liabilities. Thus, the Diacetyl Plaintiffs’ cause of action against Aaroma is “general” rather than “individualized.” See Foodtown, 296 F.3d at 169-70.
Although we have not before squarely addressed this issue, other courts applying New York and New Jersey law have held that state law causes of action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate. In In re Keene Corp., 164 B.R. 844, 849 (Bankr.S.D.N.Y.1994), for example, plaintiffs alleged that they had claims for asbestos-related injuries against Keene, the debtor corporation, and brought various lawsuits against certain third-party non-debtor defendants, alleging that Keene wrongfully transferred assets to those defendants which prevented plaintiffs from collecting damages from Keene. 164 B.R. at 848. Invoking successor liability, plaintiffs argued that by acquiring the assets of Keene, defendants also assumed the asbestos-related liabilities. The court, applying New York law with respect to successor liability, held that plaintiffs’ causes of action constituted property of the estate:
[T]he remedy against a successor corporation for the tort liability of the predecessor is, like the piercing remedy, an equitable means of expanding the assets available to satisfy creditor claims. The class action plaintiffs that invoke it allege a general injury, their standing depends on their status as creditors of Keene, and their success would have the effect of increasing the assets available for distribution to all creditors.
Id. at 853. Accordingly, the court held that the successor liability causes of action should be asserted by the trustee on behalf of all creditors.
Likewise, in In re Buildings by Jamie, Inc., 230 B.R. 36, 43 (Bankr.D.N.J.1998), the court, applying New Jersey law, concluded that a debtor’s individual creditors lacked standing to bring an alter ego veil-piercing cause of action seeking recovery from non-debtor third-party defendants, because that cause of action constituted property of the bankruptcy estate. It held that because New Jersey law permits a corporation to pierce its own veil and because recovery on the alter ego claim *881 would benefit the estate as a whole,[3] the cause of action was “properly characterized as a general claim as to which the trustee alone has standing as representative of the estate.” 230 B.R. at 44. The court discussed our holding in Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1240 n. 20 (3d Cir.1994), in which we observed that it “may seem strange” to allow a corporation to pierce its own veil, “since it cannot claim to be either a creditor that was deceived or defrauded by the corporate fiction, or an involuntary tort creditor.” Id. However, we recognized that, in New Jersey and in other states, “piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors.” Id. Thus, because a veil-piercing cause of action is “based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doetrine[] to allow a debtor corporation to pursue a claim based upon such a theory.” Id.
As we observed in Phar-Mor, so, too, here it “may seem strange” to hold that a cause of action for successor liability against Aaroma is property of Emoral’s bankruptcy estate. As a practical matter, it is difficult to imagine a factual scenario in which a solvent Emoral, outside of the bankruptcy context, would or could bring a claim for successor liability against Aaro-ma. See Buildings by Jamie, 230 B.R. at 42 (similarly acknowledging in the veil-piercing context that “from a practical standpoint, principals of a solvent debtor will not be compelled to pierce the veil of the very entity they use as a conduit for their personal business,” as this would “effectively extinguish their limited liability and expose them to the personal liability that the corporate form is employed to avoid”).
Just as the purpose behind piercing the corporate veil, however, the purpose of successor liability is to promote equity and avoid unfairness, and it is not incompatible with that purpose for a trustee, on behalf of a debtor corporation, to pursue that claim. See Phar-Mor, Inc., 22 F.3d at 1240 n. 20; see also Baker v. Nat’l State Bank, 161 N.J. 220, 227-28, 736 A.2d 462 (1999) (discussing successor liability and holding that it requires a “fact specific and equitable analysis”); Walensky v. Jonathan Royce Int’l, Inc., 264 N.J.Super. 276, 284, 624 A.2d 613 (App.Div.1993) (holding that “the doctrine of successor liability exists to protect against [ ] inequities”). As in Keene Corp. and Buildings by Jamie, the Diacetyl Plaintiffs’ cause of action against Aaroma would be based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors. Therefore, the District Court appropriately classified that cause of action as a generalized claim constituting property of the estate. See also In re OODC, LLC, 321 B.R. 128, 136 (Bankr.D.Del.2005) (holding that the bankruptcy trustee had standing to pursue successor liability claims because the claims were general and common to all creditors, noting that “most other courts have found that the trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors”).
The Diacetyl Plaintiffs concede that there is no relevant caselaw directly supporting their position that individual personal injury claims asserted on a successor liability theory should not be considered property of the bankruptcy estate. They attempt to distinguish Keene Corp. and *882 related caselaw, however, by drawing a distinction between, on one hand, a successor liability claim as a primary cause of action, and, on the other hand, successor liability as an equitable remedy to satisfy an individual damage claim. We are not aware of any applicable legal authority drawing such a distinction and, indeed, we note that any cause of action asserting successor liability necessarily contemplates some underlying damage or liability for which the claimant is seeking recourse from a third party.
The Diacetyl Plaintiffs also argue that Foodtoum supports their position because we held in that case that a pension fund’s claim against third party affiliates of a debtor employer did not constitute property of the debtor’s bankruptcy estate. See 296 F.3d at 170. Their reliance on Food-toum is misplaced. In Foodtoum, a plaintiff pension fund sought to recover $9.3 million in ERISA withdrawal liability owed by the debtor to the pension fund by bringing an alter ego veil-piercing claim and claims for breach of fiduciary duty against third parties. The cause of action at issue, however, did not constitute a general claim for successor liability based on a mere continuation theory, but instead a specific claim for liability pursuant to ERISA. We observed in Foodtoum that “[w]ith regard to alter ego liability in cases involving claims to pension benefits protected by ERISA ... there is a federal interest supporting disregard of the corporate form to impose liability.” Id. at 169 (citation and internal quotation marks omitted). Moreover, crucial to our holding in Foodtoum was the fact that the cause of action did not arise until after the debtor’s bankruptcy filing, and thus could not be considered property of the estate. We distinguished the cause of action in Buildings by Jamie, which “was based on a general injury suffered by a corporate debtor prior to its bankruptcy filing” from the cause of action in Foodtoum, which “ar[ose] from a statutorily imposed withdrawal liability that occurred after the filing of the bankruptcy petition.” Id. at 171. The Diacetyl Plaintiffs’ cause of action is distinguishable from the claim in Foodtoum for the same reason.
IV.
Because the Diacetyl Plaintiffs’ cause of action for successor liability against Aaro-ma belongs to the bankruptcy estate, it falls within the “Estate’s Released Claims” within the meaning of the Agreement between the Trustee and Aaroma. The District Court, therefore, properly reversed the Bankruptcy Court’s denial of Aaroma’s motion to enforce the order approving the settlement, and we will affirm the order of the District Court. We recognize that, in so doing, we leave the Diacetyl Plaintiffs, who allege that they have suffered serious personal injuries resulting from exposure to a harmful chemical, albeit not at the hands of Aaroma, with no apparent recourse against Aaroma. We note, however, that our holding has no bearing on any remedy the Diacetyl Plaintiffs may be seeking directly against Emoral in the bankruptcy proceeding or against any of the numerous other defendants the Diace-tyl Plaintiffs have named in the actions pending in the Superior Court of New Jersey.

. The Trustee's representative stated: "I would like to sell someone the Brooklyn Bridge, but I don’t own it so I can’t sell it. I cannot, the Trustee cannot release claims that he doesn’t own. It was never contemplated that he would be releasing claims he doesn’t own.” (Id. at 1278.)

. There is no dispute that either New Jersey or New York law applies and that the two states’ relevant applicable legal standards are *880 identical, rendering a choice-of-law analysis unnecessary.

. In Buildings by Jamie, there was no question that recovery on the alter ego claim "would necessarily inure to the benefit of all creditors,” because the plaintiff creditors constituted the entire body of creditors. 230 B.R. at 44.